IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONATHAN MALCOLM,**<br>    **Plaintiff,**<br><br>    **v.**<br><br>**REGAL IDEAS, INC., et al.,**<br>    **Defendants.** | **CIVIL ACTION**<br><br>**NO. 19-239** |

MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

**Baylson, J.**                                                                              **March 2, 2021**

## I.    INTRODUCTION

Following a fall from a ladder, Jonathan Malcolm ("Plaintiff") filed a nine-count Complaint against Regal Ideas US, Regal Ideas CAN, and Telesteps, Inc.  (Notice of Removal 12, ECF 1).[1]  He has subsequently limited his claims to strict liability against only Regal US and Regal CAN, as follows:

- **Count 1:**  Negligence (Plaintiff v. Regal Ideas US) – dropped by Plaintiff
- **Count 2:**  Strict Liability (Plaintiff v. Regal Ideas US) – pending
- **Count 3:**  Breach of Warranty (Plaintiff v. Regal Ideas US) – dropped by Plaintiff
- **Count 4:**  Negligence (Plaintiff v. Regal Ideas CAN) – dropped by Plaintiff
- **Count 5:**  Strict Liability (Plaintiff v. Regal Ideas CAN) – dropped by Plaintiff
- **Count 6:**  Breach of Warranty (Plaintiff v. Regal Ideas CAN) – dropped by Plaintiff
- **Count 7:**  Negligence (Plaintiff v. Telesteps, Inc.) – dropped by Plaintiff
- **Count 8:**  Strict Liability (Plaintiff v. Telesteps, Inc.) – dropped by Plaintiff
- **Count 9:**  Breach of Warranty (Plaintiff v. Telesteps, Inc.) – dropped by Plaintiff

 (Pl.'s Resp. in Opp'n 24–25, ECF 63-2).

---

[1] Citations to the Notice of Removal, ECF 1 reference the page number of the entire filing, not the page numbers of the individual documents contained therein.

Specifically, Plaintiff alleges that the Regal Defendants are strictly liable for his injuries because at the time of the ladder's sale, it was in a defective condition.  (Notice of Removal 19, ¶ 36; 23, ¶ 55).  He further alleges that both Defendants are actively involved in the supply chain, as Regal US is a wholly owned subsidiary of Regal CAN that distributes ladders in the United States after they are purchased and shipped here by Regal CAN.  (Id. at 18, ¶ 22–34; 23, ¶ 52–53).

Defendants have filed a Motion for Summary Judgment.  (ECF 54).  They assert that Regal CAN did not invent, design, manufacture, or test the ladder; that there is no evidence Regal US was involved in the sale of the ladder; and that Mr. Malcolm's expert testimony precludes his survival of summary judgment.  (Mot. for Summary J. 1–2, ECF 54-1).

The Court finds that the law and facts of record require the denial of Defendants' Motion for Summary Judgment.

## II.   FACTUAL BACKGROUND

Plaintiff Johnathan Malcolm was employed as the Sales Manager at Storm Guard Restorations, Inc. ("Storm Guard"), which specializes in residential roofing and siding repairs. Plaintiff provided customers with estimates for such repairs. (Notice of Removal 14, ¶ 14).  Storm Guard purchased a ladder (Telesteps 1800EP) for Plaintiff to use while making estimates.  (Id. ¶ 15).

On August 16, 2016, Plaintiff was performing an estimate using the Telesteps ladder.  (Id. at 15, ¶ 19, 20).  He alleges that as he stood on the ladder, both side rails suddenly split, and he fell to the driveway.  (Id. ¶ 21).  He sustained multiple serious injuries, which have rendered him disabled; he may permanently be so.  (Id. at ¶¶ 16, 22, 24).

## III.   PROCEDURAL HISTORY

On August 23, 2018, Plaintiff filed a complaint based on his fall in the Montgomery County Court of Common Pleas.  (Id. at 12).  Defendant filed an Answer on December 14, 2018.  (Id. at 34).  On January 16, 2019, Defendants removed the action to this Court.  (Id. at 4).  Following discovery,  Defendant moved for summary judgment pursuant to Fed. R. Civ. P. 56 on September 30, 2020.  (ECF 54).  Plaintiff responded in opposition on October 30, 2020.  (ECF 63).  Defendant replied in support on November 17, 2020.  (ECF 71).

## IV.    LEGAL STANDARD

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law."  Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case."  Id. at 325.  Summary judgment is only appropriate if the non-moving party fails to rebut the motion by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."  Id.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

This Court has diversity subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a).  A federal court exercising diversity jurisdiction must apply the substantive law of the state in which it sits.  Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Therefore, this Court must apply Pennsylvania strict liability law.

## V.     DISCUSSION

### a.  Legal Framework

The Supreme Court of Pennsylvania has adopted the strict liability test from § 402A of the Restatement (Second) of Torts.  See generally Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014).  Pennsylvania courts liberally interpret this test.  See, e.g., Sikkelee v. Precision Airmotive Corp., 907 F.3d 701, 716 (3d Cir. 2018) ("Pennsylvania law provides that whether a product is defective is a question of fact ordinarily submitted for determination to the finder of fact."); Tincher, 104 A.3d at 407 (question of whether a party has met its burden of proof is "removed . . .from the jury's consideration only where it is clear that reasonable minds cannot differ on the issue." (internal quotation marks and brackets omitted)).  The risk of injury is placed upon the supplier of the product.  Tincher, 104 A.3d at 382.

Pennsylvania law recognizes three different types of defects that can give rise to a strict-liability claim: (1) design defect; (2) manufacturing defect; and (3) warning defect.  See Phillips v. A-Best Prods. Co., 665 A.2d 1167, 1170 (Pa. 1995).  Here, the second is at issue.  To establish a manufacturing defect, a plaintiff must prove that "a seller (manufacturer or distributor) placed on the market a product in a defective condition."  Tincher, 104 A.3d at 384 (internal quotation marks omitted).  A plaintiff may show "circumstantial evidence that the product malfunctioned along with evidence eliminating abnormal use or reasonable, secondary causes for the malfunction."  Cavanaugh v. Electrolux Home Prods., 904 F. Supp. 2d 426, 432 (E.D. Pa. 2012)

(Rice, J.) (citing <u>Barnish v. KWI Bldg. Co.</u>, 980 A.2d 535, 542 (Pa. 2009)).  This is known as the

"malfunction theory."   <u>Id.</u> at 433 (denying summary judgment on strict liability claim when

plaintiffs presented sufficient evidence that dehumidifier's failure was not caused by "abnormal

use or other adverse conditions").

### b. <u>Parties' Arguments</u>

#### i.  <u>Defendants' Motion for Summary Judgment</u>

Regal Ideas US and CAN argue that Plaintiff's strict liability claims are without merit.

First the allege that Regal US was not involved in the design, manufacturing, testing or sale of the

ladder.  (Mot. for Summ. J. 2).

Likewise, Defendants assert that Regal Canada does not design, manufacture, or test

ladders, including the subject ladder.  (<u>Id.</u>)  It "simply places purchase orders" to a manufacturer

and sells the ladders it ordered.  (<u>Id.</u> at 3).  It does not oversee manufacturing operations, is unaware

of alternative ladder designs, and was unaware of any issues with the strength or durability of the

subject ladder.  (<u>Id.</u> at 8).

Finally, Defendants note that Plaintiffs' experts' theories are unreliable and inadmissible,

and that Malcolm cannot prevail without proper expert testimony.  (<u>Id.</u>)

#### ii.  <u>Plaintiff's Response in Opposition</u>

To support his strict liability claim, Plaintiff relies on the facts of the accident, the

testimony of his two expert witnesses, and principles of Pennsylvania Law on strict liability.

Plaintiff contends that his theory is supported by an eyewitness, his coworker, who saw the

ladder fracture without warning, and the testimony of the two owners of the residence where the

accident occurred.  (Pl.'s Resp. 2, 22).  Specifically, Plaintiff notes that his coworker, Mr. Jadczak

testified that the ladder fractured and the base did not slide off balance.  (<u>Id.</u> at 22).  Plaintiff also

notes that the residence owners testified in their depositions that Mr. Jadczak relayed this information to them when he asked them to call 911. (Id.) Plaintiff also points out that Mr. Jadczak testified that Mr. Malcolm was experienced in the use of ladders. (Id.)

Plaintiff also argues that his proffered expert testimony survives scrutiny under Daubert, and that, contrary to Defendant's argument, the experts will indeed testify that the ladder contained a manufacturing defect at the time it left the seller's possession due to the heat treatment it received.[2] (Id. at 12, 16).

Even if the Court were to strike the proffered testimony, Plaintiff contends he can still proceed to the jury on the "malfunction theory" of product defect under Pennsylvania law. (Id. at 21). He contends that he has met this burden via his testimony and eyewitness testimony. (Id. at 22). The expert testimony is desirable, but not necessary, and does not have a dispositive bearing on the Motion for Summary Judgment. (Id.)

Finally, Plaintiff argues that there is a genuine issue of material fact as to whether Regal Ideas US was the seller of the subject ladder, because Roy Henning's[3] deposition testimony is imprecise on that point, Regal's website lists Telesteps as a carried brand, and the ladder was shipped to Charlotte, NC, where Regal US has a warehouse. (Id. at 23–24; Pl.'s Resp. to Def.'s Statement of Material Facts 3, ¶ 11).

### iii.   Defendants' Reply in Support

Defendants reply that Roy Henning's affidavit and deposition testimony affirmed that Regal US has never designed, manufacture, or sold ladders. (Def.'s Reply in Support 2, ECF 71).

---

[2] Plaintiff reminds the Court that his specific arguments concerning these experts are set forth in the responses to Defendants' Motions to Strike, ECF Nos. 61, 64. (Resp. in Opp'n 20, ECF 63).
[3] Mr. Henning identified himself as the corporate consultant for Regal. (Deposition of Christopher Roy Henning, Ex. 3, 5:23–24, ECF 54-5).

Defendants assert that Plaintiff's evidence is insufficient to show that Regal US was part of the supply chain, or that Regal US owned the Charlotte, NC warehouse.  (Id. at 2–3).  Moreover, even if Regal US did own the warehouse, it would not be liable, because Mr. Henning testified Regal US did not sell ladders.  (Id. at 3).

Next, Defendants press that expert testimony is required in malfunction cases when the alleged defect is beyond the knowledge of lay jurors.  (Id. at 3–4).  They also contend that the malfunction theory is not applicable here, because it only applies in cases where the actual product is "destroyed, lost, or otherwise unavailable" through no fault of the plaintiff.  (Id. at 4).

### c.   Analysis

The Court finds that Malcolm's claims are sufficient to survive summary judgment; it cannot decide as a matter of law that the accident ladder was not defective and that Regal US or Regal CAN did not place the ladder in the stream of commerce.  As the non-moving party with the burden of production, Malcolm must present the Court with sufficient evidence that creates a genuine issue of material fact.  He has done so.

#### i.   Eyewitness Testimony

First, Mr. Malcolm's coworker, Timothy Jadczak, gave detailed deposition testimony about the facts of the accident.  He testified that after he and Plaintiff arrived at the work site, they properly set up the ladder, and he watched as Mr. Malcolm ascended it.  (Ex. 7, 10:10–14:8, ECF 63-3).  He testified that the ladder did not move as Malcolm climbed it, that he had not made it high enough to step onto the roof, and that the ladder suddenly snapped underneath him, sending him "almost horizontally" to the ground.  (Id. at 27:14–21; 28:5–29–20).  He also confirmed that that the ladder did not collapse or retract, and that it did not slide out.  (Id. at 34:24–35:16).  The

owners of the residence confirmed that Mr. Jadczak relayed this information to them when EMS was called.  (Ex. 8, 13:2–4; 15:23–16:1; 18:20–23, ECF 63-3; Ex. 9, 10:19–20; 14:1, ECF 63-3).

Mr. Jadczak clearly testified that the ladder suddenly "snapped" underneath Mr. Malcolm. (Ex. 7, 29:17).  Given Pennsylvania's liberal application of Restatement § 402A, this is sufficient to create a genuine issue regarding whether the ladder was defective.  See Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) ("[I]n considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed[,] and all justifiable inferences are to be drawn in his favor.").

ii.  Expert Opinions

Plaintiff also proffers expert testimony from both David Pope and Stephen Fournier.  Dr. Pope, an expert in the field of metallurgy and materials science, was retained to test the accident ladder and "reach an opinion regarding whether or not the ladder was defective from a materials standpoint." (Pl.'s Resp. in Opp'n to Def.'s Mot. to Strike 2, ECF 61-1).  Defendants filed a motion objecting to this testing. (ECF 27).  The Court held a hearing on that motion, and decided to allow the testing after the parties met and conferred to agree on conditions. (ECF 44).  After they did so, a stipulated order was entered and Dr. Pope performed the testing. (ECF 46).  His ultimate opinion was that "the material used in the accident ladder was far more brittle than it should have been, and was therefore susceptible to sudden, catastrophic failure." (Pl.'s Resp. in Opp'n to Def.s Mot. to Strike 5).  Scientific literature in this field identifies improper heat treatment as the primary cause of such brittleness in the alloys comprising the ladder. (Id. at 16–17).

Mr. Fournier is an expert in the engineering field.  He inspected the accident ladder, an exemplar of the same model from a different production batch, and the location where the accident

occurred. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Strike 2, ECF 64-1).   Based upon these investigations and the data from Dr. Pope, Mr. Fournier concluded that the cause of the ladder's fracture was a combination of the material defects identified by Dr. Pope and the design of the ladder itself.  (Id. at 5–6).  He found no indication of misuse of the ladder.  (Id. at 6).  His report specifically noted that "[t]he cause of the incident and the collapse was not the bottom of the ladder kicking out."  (Id. at 6).

Defendants have moved to strike and exclude the testimony, declarations, and reports of both Dr. Pope and Mr. Fournier, contending that they are inadmissible under Fed. R. Ev. 702 and Daubert.  (ECF Nos. 56, 57).  The Motion for Summary Judgment rests in part on the argument that Pope's and Fournier's opinions must be excluded.  (Mot. for Summ. J. 8–9).

After reviewing the experts' reports, the motions to strike, and all responses, the Court finds that Plaintiff's witnesses are sufficiently qualified as experts.  Their examination and opinion of the evidence was reasonable, reliable, and admissible.  Any further disputes about the credibility and weight of expert testimony are for the jury to resolve.  See In re Zoloft Prods. Liab. Litig. 858 F.3d 787, 792–93 (3d Cir. 2017).  Specifically, Defendants' attempt to rely on their own expert's testing of exemplar ladders is not determinative at the summary judgement stage, and may be reserved for trial.  See United States v. Mitchell, 365 F.3d 215, 245 (3d Cir. 2004) (conflicting expert opinions create a factual issue for the jury).

### iii.   Defendants' Connection to the Accident Ladder

Malcolm argues that Defendants conceded that there is enough evidence to find Regal CAN sold the accident ladder, because their Statement of Material Facts states "Telesteps is a trademark used by Regal Canada for certain telescoping ladders Regal Canada distributes in the United States

and Canada." (Def.'s Statement of Material Facts ¶ 8, ECF 54-10). Defendants do not specifically respond to this contention in their reply brief.

Mr. Henning's affidavit and deposition testimony also provide evidence that both entities are involved in the chain of distribution of the ladder. (Ex. 3, 9:20–10:10; 43:23–44:2, ECF 63-3). He confirmed that Regal CAN lists the name "Telesteps" as a brand of ladders it distributes, and that it has a warehouse in Charlotte, NC, where the accident ladder was shipped. (Id. at 131:3–6; Ex. 2; Aff. 3, ¶ 10, ECF 54-4; Aff. 5, ¶ 19). Although Defendants contest that Regal Ideas US never designed, manufactured, tested, or distributed ladders, as Plaintiff points out, a website that appears to be an advertisement for both Defendants lists Telesteps as a carried brand. (Pl.'s Resp. to Def.'s Statement of Material Facts 3, ¶ 11, ECF 63-1; Ex. 4, ECF 63-3).

As a subsidiary of Regal CAN, Regal US can still be held liable for accidents under Pennsylvania law. See Hoffman v. Loos & Dilworth, Inc., 452 A.2d 1349, 1354–55 (Pa. Super. Ct. 1982) (holding that participants in the sales process can be held strictly liable for injuries resulting from product defects even when they do not take title or possession of those products).

For these reasons, the Court finds that genuine issues of material fact exist as to whether the ladder was defective and whether Defendants placed that ladder in the stream of commerce. Based on Plaintiff's concessions, the Court will dismiss all claims against Telesteps and the claims in negligence and breach of warranty against Regal Ideas US and Canada.

## VI.   CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED.** Defendants' Motions to Strike (ECF 56 & 57) are **DENIED**.

An appropriate Order follows.

O:\CIVIL 19\19-239 Malcolm v REgal Ideas\19cv239 MSJ memo.docx