# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JONATHAN MALCOLM,**<br>Plaintiff,<br><br>v.<br><br>**REGAL IDEAS, INC., et al.,**<br>Defendants. | **CIVIL ACTION**<br><br>**NO. 19-239** |

### MEMORANDUM RE: *DAUBERT* MOTIONS

J. Baylson                                                                                 July 15, 2021

### I.     INTRODUCTION

This case arises from Plaintiff, Jonathan Malcolm's, fall from a ladder during his employment as a sales manager for a roofing and siding repair company. He seeks damages related to injuries sustained from the fall. In March 2021, this Court denied Defendants' Motion for Summary Judgment. See Malcolm v. Regal Ideas Inc., Civil Action No. 19-239, 2021 WL 816751 (E.D. Pa. Mar. 2, 2021) (Baylson. J.). Pending now are: (1) Defendant's Motion to Strike and Exclude the Testimony and Reports of Plaintiff's Experts Mark Wagner and Lance Yarus (ECF 55) and (2) Plaintiff's Motion to Exclude Defendant's Expert Jon Ver Halen (ECF 65). The parties have filed opposition and reply briefs for each motion.

### II.     FACTUAL BACKGROUND

Plaintiff Johnathan Malcolm was employed as the Sales Manager at Storm Guard Restorations, Inc. ("Storm Guard"), which specializes in residential roofing and siding repairs. Plaintiff provided customers with estimates for such repairs. (Notice of Removal 14, ¶ 14, ECF 1). Storm Guard purchased a ladder (Telesteps 1800EP) for Plaintiff to use while making estimates. (Id. ¶ 15). On August 16, 2016, Plaintiff was performing an estimate using the Telesteps ladder. (Id. at 15, ¶¶ 19, 20). He alleges that as he stood on the ladder, both side rails suddenly

1

split, and he fell to the driveway. (Id. ¶ 21). He sustained multiple serious injuries, which have rendered him disabled; he may permanently be so. (Id. ¶¶ 16, 22, 24).

### III. PROCEDURAL BACKGROUND

Several experts have been retained by the parties in this case, and many of them have been subject to Daubert attacks, as described below.

#### a. Plaintiff's Experts

Plaintiff has procured reports from five experts: David Pope, Ph.D. (metallurgist and materials science expert); Stephen Fournier, Ph.D. (engineering expert); Andrew Verzilli, M.B.A. (consulting economist); Mark Wagner, Ph.D. (neuropsychologist and vocational expert); and Lance Yarus, D.O. (medical expert). Defendant has filed Daubert motions attacking each expert except Mr. Verzilli.

#### b. Defendant's Experts

Defendant has proffered the reports of two experts: Jon Ver Halen, P.E. (engineering expert); and Ellen Wright, Ph.D. (metallurgist expert).

#### c. Prior *Daubert* Motions

Defendant previously moved to strike and exclude the testimony, declarations, and reports of Plaintiff's experts, Dr. Pope and Mr. Fournier. (ECF Nos. 56, 57.) The Court denied Defendant's Motion. It found that Plaintiff's witnesses were sufficiently qualified as experts, and that their examination and opinion of the evidence was reasonable, reliable, and admissible, ruling that "disputes about the credibility and weight of expert testimony [were] for the jury to resolve." (Mem. Op. 9, ECF 74; Malcolm v. Regal Ideas Inc., Civil Action No. 19-239, 2021 WL 816751, *5 (E.D. Pa. Mar. 2, 2021) (Baylson. J.)).

### IV. LEGAL STANDARDS

The admission of expert testimony is governed by Fed. R. Evid. 702, which instructs, in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

The Supreme Court interpreted this rule in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), identifying several factors to guide a determination of an expert's reliability:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 n.8 (3d Cir. 1994) (discussing Daubert).

Daubert and its progeny make clear that trial judges have a "gatekeeping" obligation to ensure that only reliable and relevant testimony be presented at trial. Daubert, 509 U.S. at 597. The Third Circuit reads Daubert to require a "trilogy of restrictions" that the proposed expert testimony must meet: qualification, reliability, and fit. See Schneider ex rel. Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2013). In considering these three restrictions, the Court must consider whether the expert testimony will assist the trier of fact. See United States v. Velasquez, 64 F.3d 844, 850 (3d Cir. 1995).

The Third Circuit makes a broad inquiry in considering whether an expert possesses enough "specialized knowledge" to testify as an expert. Bruno v. Bozzuto's, Inc., 311 F.R.D. 124, 35 (M.D. Pa. 2015).

To be reliable, an expert opinion must "be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Paoli, 35 F.3d at 742 (internal

quotation marks omitted). Experts must have "good grounds" for their beliefs. Id. at 742, 744. The reliability inquiry is "flexible," and the trial court has "broad latitude" in determining how to assess the reliability of an expert opinion. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141–42 (1999).

Expert opinions "fit" the facts of the case when they "assist the jury by providing it with relevant information necessary to a reasoned decision of the case." Crowley v. Chait, 322 F. Supp. 2d 530, 542 (D.N.J. 2004).

## V. DEFENDANT'S MOTION TO STRIKE WAGNER AND YARUS

### a. Mark Wagner's Report

Dr. Wagner is Plaintiff's expert. He is a licensed neuropsychologist and vocational expert. Wagner evaluated Mr. Malcolm in person in April 2019. (Wagner Report 5, Ex. 1, ECF 55-2.) He concluded that for Mr. Malcolm to return to an active work life, he would need to demonstrate "the ability to get to work on time . . . ; the ability to be constantly productive with regard to the quality and quantity of his work; and the ability to effectively interact and communicate with clients as well as co-workers and supervisors." (Id. at 32.) He went on to say that, due to Mr. Malcolm's "continuing biopsychological difficulties," "there are significant questions as to his ability to sustain full time employment." (Id.)

### b. Lance Yarus's Report

Dr. Yarus is also Plaintiff's expert. He is a medical doctor. (Yarus Report 42, Ex. 2, ECF 55-2.) Yarus evaluated Mr. Malcolm in person in August 2019. (Id. at 35.) He diagnosed twenty-nine specific injuries in Mr. Malcolm, and concluded that they were directly caused by the fall from the ladder. (Id. at 40.) He described Mr. Malcolm's prognosis as "poor for the future," given he "sustain[ed] a severe and permanent impairment of function in regard to multiple areas of the body . . . including his brain." (Id. at 41.) Dr. Yarus found that Mr. Malcolm's injuries rendered

him "totally disabled from any and all gainful employment." (Id. at 41–42.) He called for continuing evaluation and treatment to monitor Mr. Malcolm's physical and cognitive processes. (Id.)

### c. **Parties' Arguments**

#### i. **Defendant's Motion**

Defendant seeks to exclude the testimony and reports of Wagner and Yarus. Defendant's memorandum in support of the motion argues that Yarus's and Wagner's opinions are inadmissible because Plaintiff's expert Verzilli, an economist, disproves Wagner's and Yarus's claims. (Def.'s Mot. to Strike and Exclude 5, ECF 55-1.) Verzilli opined that Malcolm only had a past lost earning claim of $153,194. (Id. at 4.)

Defendant argues that Wagner and Yarus opined that Malcolm suffered a total disability and could not return to work. (Id. at 2–4.) But, Defendant contends, Malcolm did return to work, and earned the same amount as before his accident within one month after Yarus and Wagner evaluated him. (Id. at 6.) Because this evidence contradicts Yarus's and Wagner's testimony, they should be precluded from testifying and their reports should be struck. (Id.)

#### ii. **Plaintiff's Response**

Plaintiff responded in opposition. (Pl.'s Resp. in Opp'n, ECF 60.) First, he emphasizes that he has valid and credible evidence to support his claim for loss of earning capacity. (Id. at 6–8.) He argues that relevant evidence on this claim, including expert testimony, should be admitted. (Id.) Second, Plaintiff argues that Mr. Verzilli—an economic expert—has no medical training and is not qualified to opine on Malcolm's vocational prospects. (Id. at 9–10.) Finally, Plaintiff emphasizes that Malcolm has still not re-entered the workplace despite attempts to do so. (Id. at 11.)

5

### iii. Defendant's Reply

Defendant replies that whether Plaintiff can recover for lost future earnings is irrelevant when Verzilli has already concluded that Malcolm will not suffer any. (Def.'s Reply 1–2, ECF 70.) Defendant accuses Plaintiff of neglecting to clarify that Malcolm left Storm Guard before Defendant used Verzilli's report as a basis to strike Yarus's and Wagner's testimony. (Id. at 2–5.) Specifically, Defendant cites language in Verzilli's supplemental report that allegedly assumes Malcolm was still working as of January 16, 2020.[1] (Id. at 3–4.) Yet, Defendant explains, Malcolm now claims that he quit working before the end of October 2019. (Id. at 4.) Defendant argues that the late disclosure of Malcolm's employment status gave Defendant no time to verify or investigate Mr. Malcolm's employment status. (Id.) Defendant contends that due to this dishonesty, Fed. R. Civ. P. 37 mandates that Malcolm cannot rely on his affidavit. (Id. at 5.) And without that, the only remaining credible evidence of Malcolm's condition in 2020 is Verzilli's supplemental report, which proves that Malcolm (1) was able to return to the same job as before the accident; and (2) is not permanently disabled. (Id.) This leaves no foundation for Wagner's and Yarus's claims, and both witnesses should be excluded. (Id.)

### d. Analysis

Defendant relies on the Elcock decision[2] to support its above-described arguments, but that case is not on point here. In Elcock, the excluded witness based his report on a blind assumption that a plaintiff was 100% disabled, even though another expert described plaintiff as between 50 and either 60 or 75% disabled. The Third Circuit held that the expert's assumptions lacked foundation in the record and upheld his exclusion.

---

[1] Defendant points to the following sentence: "We are advised that Mr. Malcolm did return to employment with Storm Guard earning $50,000 annually on September 9, 2019. Assuming he is able to continue working at his pre-injury level, the loss in earning capacity would cease as of September, 2019." (ECF 60-2 at 94.)
[2] See Elcock v. Kmart Corp., 233 F.3d 734 (3d Cir. 2000).

Here, Wagner and Yarus both performed in-person examinations of Mr. Malcolm. Their opinions therefore are a far cry from relying on "blind assumptions" about Mr. Malcolm's condition.

In addition, Mr. Verzilli's reports do not contradict Wagner's and Yarus's findings. In Mr. Verzilli's initial report, he notes that Mr. Malcolm suffered permanent injuries, and lists Dr. Wagner's report as a document he reviewed. (Verzilli Report 51, Ex. 3, ECF 55-2.) He provided wage loss estimates for both a possible return to the labor market and for not returning to the labor market. (Id. at 54.) Mr. Verzilli's supplemental report does not necessarily reflect the view that he believed Malcolm was still working into January 2020, it merely projects into the future indefinitely "assuming" that Mr. Malcolm *could* continue working.

Verzilli is an economist; it is reasonable that his opinion may differ from those of doctors. Wagner's report acknowledges that an economist could provide a more complete picture of lost earnings. (Id. at 33.) Thus, far from contradicting each other, these experts' reports complement each other. Defendant has not identified anything in terms of qualifications, reliability, or methodology that renders Wagner's or Yarus's opinions inadmissible. It is for the jury to sort through whether and how the experts differ as it weighs the relevant evidence. See, e.g., Kansky v. Showman, No. 3:09cv1863, 2011 WL 1362245, *4 (M.D. Pa. Apr. 11, 2011) (denying motion to preclude allegedly inconsistent expert testimony, because "[t]he extent to which the opinions of [the experts] differ will be an appropriate matter for . . . cross examination and argument.").

## VI. PLAINTIFF'S MOTION TO STRIKE VER HALEN

Plaintiff has moved to exclude only Mr. Ver Halen.

### a. Ver Halen's Report

Mr. Ver Halen, a Professional Engineer, is Defendant's expert on liability. (Ver Halen Report 2, ECF 65-4.) He generated a report on the circumstances surrounding the accident. He

tested the subject ladder and an exemplar ladder and examined the site of the accident. (Ver Halen Report 20–21, ECF 65-3.) The subject ladder was tested to see how two pieces would fall when sawn above the tenth rung. (Id. at 23–24.) Exemplar ladders were tested for the coefficient of friction needed to hold the ladder up; lubricant samples; placing a 1000-lb. weight on the tenth rung; and dropping a 290-lb. weight (Mr. Malcolm's weight) on the tenth rung. (Id.) Ver Halen attached photographs and videos of the tests to further illustrate the points made in his report.

Based on his testing and examinations, Mr. Ver Halen generated twelve opinions:

(1) the subject ladder met requirements of ANSI and OSHA;
(2) Mr. Malcolm used a ladder that was too short for the job;
(3) the base of ladder should have been restrained;
(4) the ladder's foot abrasion is different than normal wear and indicates the ladder slipped under load;
(5) the ladder did not fracture;
(6) the material on the upper fracture surface was driveway sealant;
(7) there is no evidence of any prior fracture on the ladder;
(8) damage to the ladder is consistent with Mr. Malcolm impacting it;
(9) appearance of the exemplar ladder's fracture is consistent with appearance of subject ladder fracture;
(10) skid marks on the driveway indicate the ladder slipped under load;
(11) the condition of the lower fracture surfaces is not consistent with the theory that there was a pre-existing fracture with material collected in it; and
(12) the coefficient of friction was sufficient to keep the ladder from slipping out with normal use. (Id. at 1–2.)

b. **Parties' Arguments**

i. **Plaintiff's Motion**

Although Plaintiff does not correlate each of his arguments to Ver Halen's numbered opinions, he argues against the admission of most aspects of Ver Halen's report. (Pl.'s Mem. in Supp. 5–26, ECF 65-1.)

First, Plaintiff states that there is no valid foundation for Ver Halen's opinion that the accident ladder complied with ANSI resting or OSHA requirements, and that evidence of industry standards—a negligence concept—is inadmissible in this strict liability action. (Id. at 6–7.) Plaintiff also argues against Ver Halen's vague references to unspecified and undocumented prior

8

experiments that support his theory that the ladder slid out. (Id. at 17–18.) Specifically, Plaintiff contends that any conclusions reached cannot be extrapolated to the accident ladder. And, because no record or data of these experiments exist, nothing can be known about the methodology, error rate, or results, and how they might apply to the facts of this case. (Id. at 17–19.)

Further, Plaintiff argues that Ver Halen's theory of how the accident occurred is speculative. (Id. at 12–16.) Plaintiff posits that the theory improperly injects concepts of comparative negligence into the strict liability action. (Id. at 12.) They also rest on assumptions about what happened that contradict the eyewitness testimony. (Id.) Likewise, Plaintiff argues that Ver Halen's opinions about the distinct wear pattern on the feet of the ladder are speculative. (Id. at 16–17.)

### ii. Defendant's Response[3]

Defendant notes that Plaintiff does not challenge Ver Halen's experience or qualifications, leaving only the facts and methodology supporting Ver Halen's conclusions at issue. (Def.'s Resp. in Opp'n 10, ECF 72.) Defendant contends that Ver Halen reached his conclusions by examining the physical evidence and testing to determine whether and under what conditions he could reproduce the fall. (Id. at 10–12.) He relied on ANSI standards—adopted by OSHA—as a "learned treatise." (Id. at 12.) He performed tests to determine how the fall occurred consistent

---

[3] Defendant responds in opposition first on a procedural point, contending that Plaintiff's motion is untimely and should not be considered, because it was submitted one month after substantive motions were due per the Court's scheduling order. (Def.'s Resp. in Opp'n 9, ECF 72.) Defendant further responds that even considered on its merits, the motion should fail. (Id.) In reply, Plaintiff notes that counsel interpreted the Court's Order to require "substantive motions" be filed by September 20, 2020. But, even assuming *arguendo* that the motion was untimely, Defendant has not been prejudiced, and did not even raise any possibility of prejudice. (Pl.'s Reply in Supp. 1–2, ECF 73.) Rather, to not consider the motion would prejudice Plaintiff since Ver Halen's opinions are fatally and fundamentally flawed. (Id. at 2.) The Court agrees with Plaintiff's reading that the Order covered dispositive motions, because the Order itself specifically granted an extension for expert reports. Further, the pandemic allowed for many extensions in many cases. The Court therefore will consider Plaintiff's motion on the merits.

9

with the physical evidence, to see if his testing would result in the same damage pattern displayed on the accident ladder and at the scene. (Id. at 12–13.) Specifically, he focused on the skid marks on the driveway to reach his "slide out" theory, and disregarded Jadczak's account because it conflicted with the physical skid mark evidence. (Id. at 12.)

Defendant contends that Ver Halen's methods were reliable and helpful because they will help a jury understand that there was nothing wrong with the ladder and help connect physical evidence to the fall. (Id. at 13.) Defendant also notes that it was proper to show that the ladder was not unreasonably dangerous or defective, that a defect did not cause Malcolm's fall, and that the accident did not result from intended use. (Id. at 15–16.)

### iii. Plaintiff's Reply

Plaintiff further emphasizes that the Third Circuit unequivocally excludes industry standards in Pennsylvania product liability actions, because they improperly introduce negligence concepts. (Pl.'s Reply 2–3, ECF 73.) Likewise, any alleged misuse of the ladder is inadmissible, contrary to Defendant's argument that it may come in under the risk-utility avenue to prove a product defect allowed by Tincher v. Omega Flex, 104 A.3d 328, 335 (Pa. 2014). (Id. at 6–8.) Plaintiff points out that Tincher only allows risk-utility analysis for design defects, and for manufacturing defects—at issue here—Plaintiff must demonstrate the danger is unknowable and unacceptable to the average or ordinary consumer. (Id. at 6.)

Plaintiff also notes that Defendant's response failed to identify any reliable methodology used by Ver Halen and spent the bulk of the brief circularly reasoning that his methods were reliable because he is an expert. (Id. at 3–6.)

### c. **Analysis**

Plaintiff challenges Mr. Ver Halen's testimony on the grounds of reliability and methodology. Pennsylvania law applies to this inquiry. See Moyer v. United Dominion Indus.,

Inc., 473 F.3d 532, 538 (3d Cir. 2007). Plaintiff's motion groups Ver Halen's opinions into six categories to argue why they should be excluded. Plaintiff's answers to questions for the July 1, 2021 argument, ECF 84, concedes that Ver Halen may testify on several points. The Court has delineated these specific objections and concessions into ten discrete issues, discussed below.

|   | Ver Halen's Opinion Plaintiff seeks to exclude | Citations to Report (Ex. B, ECF 65) | Citations to Deposition (Ex. C, ECF 65) |
|---|---|---|---|
| 1 | Evidence of industry standards | p. 7 | 52:16–55:9; 57:3–11; 70:19–71:2; 95:12–19; 174:1–14 |

Plaintiff argues that exclusion of opinions related to industry standards is mandated by Pennsylvania case law. (Pl.'s Reply in Supp 2–3, ECF 73.) Defendant argues the opposite, and elaborated at the July 1, 2021 oral argument that these are "safety" standards, not industry standards.

The admissibility of industry standards in strict liability cases has been the subject of discussion in several Pennsylvania state court decisions. In Tincher v. Omega Flex, Inc., 104 A.3d 328 (Pa. 2014), the Pennsylvania Supreme Court overruled certain aspects of a prior leading case on negligence and strict liability, Azzarello v. Black Bros. Co., Inc., 391 A.2d 1020 (Pa. 1978), which precluded evidence of a product's compliance with industry standards as irrelevant and inadmissible in a strict liability action.

Since Tincher, Pennsylvania courts have travelled a "long and winding road" on whether and to what extent Tincher modified Azzarello's rule that evidence of industry standards improperly injects notions of negligence into strict liability actions. Mercurio v. Louisville Ladder, Inc., 3:16-CV-412, 2019 WL 1657325, *7 (M.D. Pa. Apr. 17, 2019); see also id. at *3–7 (reviewing the relevant jurisprudence); Sullivan v. Werner Co., No. 3086 EDA 2019, 2021 WL 1419480, *5–10 (Pa. Super. Ct. Apr. 15, 2021) (same). A review of federal and state decisions from the lower courts indicates that most judges exclude evidence of industry standards in strict liability actions.

The Superior Court of Pennsylvania recently wrote that "it is irrelevant if a product is designed with all possible care, including whether it has complied with all industry and governmental standards, because the manufacturer is still liable if the product is unsafe." Sullivan, 2021 WL 1419480, at *12.

This Court will follow suit. Accordingly, testimony and discussion of industry standards shall be precluded.

|   | Ver Halen's Opinion Plaintiff seeks to exclude | Citations to Report (Ex. B, ECF 65) | Citations to Deposition (Ex. C, ECF 65) |
|---|---|---|---|
| 2 | Mr. Malcolm used "too short" a ladder | pp. 7-8 | 174:15–22 |
| 3 | The ladder was improperly restrained | pp. 7-8 | -- |
| 4 | The set up and use of the ladder resulted in its slipping out | pp. 7-8 | 180:1–24 |

Plaintiff argues that these three of Mr. Ver Halen's opinions are inadmissible under Pennsylvania law: (1) that Mr. Malcolm used a ladder too short for the intended job when he may have had a longer one available; (2) that the base of the ladder was not properly held in place by Mr. Jadczak or some kind of brace; and that (3) improper set-up and use of the ladder resulted in its slipping out. (See Ver Halen Report 1–2, Ex. B, ECF 65-4.) At oral argument, Plaintiff argued that issues of comparative negligence are substantively prohibited by Pennsylvania law. Defendant responded that these opinions can be admitted when they go to the issue of whether the ladder proximately caused Mr. Malcolm's injuries.

The Pennsylvania Supreme Court[4] "has continually fortified the theoretical dam between the notions of negligence and strict 'no fault' liability." Walton v. Acvo Corp., 610 A.2d 454, 462

---

[4] Courts have noted that that "the Pennsylvania Supreme Court, perhaps more than any other state appellate court in the nation, has been emphatic in divorcing negligence concepts from product-liability doctrine." See Parks, 113 F.3d at 1334–1336 (collecting cases).

(Pa. 1992). If a plaintiff's conduct is foreseeable "and the defect is found to have been a cause of the injury, the plaintiff's actions cannot preclude defendant liability." Parks v. AlliedSignal, Inc., 113 F.3d 1327, 1335 (3d Cir. 1997). Still, if a defendant's evidence has "any tendency to show that plaintiff's injuries were caused *solely by misuse*," it should be admitted for that purpose. Moyer, 473 F.3d AT 542–43 (emphasis added); see also Madonna v. Harley Davidson, Inc., 708 A.2d 507, 509 (Pa. Super. Ct. 1998) ("As [several Pennsylvania] cases demonstrate, a user's negligence is not relevant if the product defect contributed in any way to the harm. However, where the defense offers evidence to establish that the accident was *solely* the result of the user's conduct, and not related in any way with a product defect, it is relevant and admissible for the purpose of proving causation.").

Given the factual disputes raised by the parties regarding the handling and setup of the ladder, the Court will reserve a final ruling on the admissibility of these opinions until the issues are further developed at trial. See, e.g., Lontex Corp. v. Nike, Inc., Civ. Action No. 18-5623, 2021 WL 1145904, *6 (E.D. Pa. Mar. 25, 2021) (Baylson, J.) (where "factual issue[s]" remain, "the Court will delay a final ruling . . . until the facts are developed at trial").

The Court adds one caveat. Should the fourth opinion be admitted, the Court would restrict Mr. Ver Halen to testify only that the set up and use of the ladder was *consistent with* its slipping out. Plaintiff concedes this point in his answers to questions for oral argument, writing that "Ver Halen is plainly qualified to state that placing the ladder on a sloped surface would make it more prone to sliding out." (Pl.'s Answers to Questions for Oral Arg. 7, ECF 84.)

|   | **Ver Halen's Opinions Plaintiff seeks to exclude** | **Citations to Report (Ex. B, ECF 65)** | **Citations to Deposition (Ex. C, ECF 65)** |
|---|---|---|---|
| 5 | The ladder did not suddenly fracture, but slid out | pp. 6–7 | 129:12–22; 135:6–9; 139:14–18; 147:15; 175:18–22; |

13

Plaintiff also argues that Ver Halen's "slide out" theory of the accident is too speculative. While he concedes that "Ver Halen has sufficient qualifications . . . to opine that the lack of 'beach marks' indicates no prior fracturing," and that the ladder "slid under loading conditions," he objects to Ver Halen's testimony as to the *cause* of the loading conditions and his alleged failure to test for lubricant[5] on the ladder. (Id. at 10–11.)

Still, Plaintiff argues that Ver Halen's theory largely relies on assumptions about what must have happened and conflicts with the testimony of an eyewitness, Mr. Jadczak. Ver Halen also admits that the coefficient of friction[6] was more than twice what was needed to keep the ladder in place, and that something extraordinary must have happened to cause the accident. He grounds this theory in the skid marks on the garage wall, driveway, and some damage to the ladder at the bottom rungs.

The Court will not allow Ver Halen to testify about his theory in a way that concludes what happened to the ladder. That kind of fact-finding is the exclusive role of the jury. See, e.g., Speights v. Arsens Home Care Inc., Civil Action No. 19-2343, 2020 WL 6343263, *5 (E.D. Pa. Oct. 29, 2020) (Baylson, J.) (experts "may not comment on ultimate issue[s]" of fact). However, assuming adequate proof is introduced at trial, Ver Halen may be able to testify about the physical evidence—skid marks, abrasions, etc.—that he personally observed. He may opine from his observations that the physical evidence is consistent or inconsistent with certain results regarding the ladder. For example, Plaintiff concedes that Ver Halen is "qualified to opine that bowing in the upper section of the ladder is consistent with Mr. Malcolm striking the ladder." (Pl.'s Answers to Questions for Oral Arg. 10.)

---

[5] Plaintiff argues that the presence of lubricant would indicate prior cracking along the fracture point. (Pl.'s Answer to Questions for Oral Arg. 10.)
[6] Plaintiff also concedes that Ver Halen is qualified "to offer the opinion that the [coefficient of friction] of the feet on the asphalt should have been sufficient to keep the ladder from slipping out under normal, proper use." (Id. at 12–13.)

| | **Ver Halen's Opinions Plaintiff seeks to exclude** | **Citations to Report (Ex. B, ECF 65)** | **Citations to Deposition (Ex. C, ECF 65)** |
|---|---|---|---|
| 6 | The abrasion pattern on the foot of the ladder is distinct from normal wear, indicating the ladder slipped out | pp. 6–7, 20–21 | 152:15–153:5; 153:12–17; 175:23–176:14 |

Plaintiff also moves to exclude testimony about the ladder's footwear pattern. He argues that Ver Halen's report conclusively states that the wear pattern on the ladder's feet indicates that the ladder slid backward, with high pressure and movement across a rough material. At oral argument, Defendant argued that experts can testify to these kinds of opinions based on their past experiences.

The Court will reserve ruling on this opinion until trial. As with the fifth opinion described above, assuming appropriate proof is introduced at trial, Ver Halen may be able to testify about the abrasion pattern on the ladder's feet, but only to the extent that it is consistent or inconsistent with certain results regarding the ladder.

| | **Ver Halen's Opinions Plaintiff seeks to exclude** | **Citations to Report (Ex. B, ECF 65)** | **Citations to Deposition (Ex. C, ECF 65)** |
|---|---|---|---|
| 7 | Teeter-totter experiments have shown that ladders can slide out | pp. 5–6 | 129:16–19; 157:1–159:1; 160:4–14 |

Plaintiff also seeks to exclude discussion of past experiments Ver Halen mentions in his report in support of the "slide out" theory discussed above. The Court will exclude discussion of these prior experiments, because, as Plaintiff pointed out in his brief and at oral argument, Ver Halen does not cite to any specific methodology, data, or publication to substantiate this opinion. Rather, as he conceded in his deposition, there is no available record of these experiments, and he hired Hollywood stuntmen to assist with the extreme maneuvers. (Ver Halen Dep. 157:1–159:7, Ex. C, ECF 65-6.)

This is the kind of expert testimony that Daubert prohibits. Without any record to ground these experiments in, they are unsubstantiated and the Court cannot probe their reliability or fit. See, e.g., Lithuania Com. Corp., Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 463–466 (D.N.J. 1998) (excluding evidence of nylon testing because court had no data nor record to evaluate reliability of test).

|  | Ver Halen's Opinions Plaintiff seeks to exclude | Citations to Report (Ex. B, ECF 65) | Citations to Deposition (Ex. C, ECF 65) |
| --- | --- | --- | --- |
| 8 | The "weight" test – hanging a 1000-lb weight from the 10th rung of exemplar ladder | p. 4 | 99:10–13 |
| 9 | The "weight drop" test – dropping a 290-lb weight onto the 10th rung of exemplar ladder | p. 4 | 99:10–13; 139:4–13 |
| 10 | The "fake fracture" test – releasing two halves of a sawed exemplar ladder | pp. 5, 7, 24 | 99:10–13 |

Plaintiff moves to exclude discussion of three other tests performed by Ver Halen on exemplar ladders: (1) the "weight" test; (2) the "weight drop" test; and (3) the "fake fracture" test, because they were conducted on exemplar ladders with conditions that were not "substantially similar" to those of the accident ladder and site. (Pl.'s Mot. to Exclude Ver Halen 19, ECF 65-1.)

Here, the ladder in the "weight" test and "weight drop" was a new ladder coded April 2018, well after the date on the subject ladder. Plaintiff also pointed out at oral argument that the exemplar ladders do not contain the same brittle features of the accident ladder. Ver Halen provides no details as to how a static weight could apply the same kinds of forces as a dynamic human body. Finally, the "fake fracture" test appears circular: because it was sawed across a certain point, it fractured in a certain way. But it fractured in a certain way because it was sawed.

Still, the Court will reserve ruling on the admissibility of these opinions. Defendant must offer evidence that the exemplars Ver Halen used are substantially similar in all material aspects to the accident ladder before Ver Halen can testify about these experiments.[7]

As a final point, the Court notes that Plaintiff does not contest Defendant's other expert, Ms. Wright's, report. (Ex. E, ECF 65-7.) Ms. Wright examined and tested the subject ladder, and performed a follow-up inspection and tests on exemplar ladders. (Id. at 3.) She concluded her report with six opinions: that (1) there was no evidence the ladder was improperly manufactured; (2) there was no evidence to support the ladder's sudden failure under normal operation; (3) the macro- and microscale makeup of the ladder's metals was similar to those in an exemplar ladder; (4) the subject and exemplar ladders passed performance tests and 1000-lb loading tests, respectively; (5) there was no evidence of a pre-existing crack in the subject ladder; (6) the black residue sampled from the subject ladder is consistent with deposits on the homeowners' driveway. (Id. at 7.)

## VII. CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike and Exclude Wagner and Yarus is **DENIED**, and Plaintiff's Motion to Exclude Ver Halen is **GRANTED IN PART**, with the remainder of issues raised by the Motion to be decided at trial.[8] An accompanying Order follows.

---

[7] The Southern District of Florida excluded other of Ver Halen's tests in a similar context. See generally Ore v. Tricam Indus., Inc., No. CIV-13-773-D, 2015 WL 11197754, *4 (S.D. Fla. Mar. 11, 2013) (Otazo-Reyes, Mag. J.).

[8] The Court is under no compulsion to decide all Daubert issues at present. See SRP Mgmt. Corp. v. Seneca Ins. Co., Civil Action No. 06-935, 2008 WL 706962, *2 (E.D. Pa. Mar. 14, 2008) (Strawbridge, Mag. J.) (quoting Clark v. Richman, 339 F. Supp. 631, 648–49 (M.D. Pa. 2004)) ("Within the context of trial, [the court] will hear testimony and argument as necessary on the issues presented in this motion and rule as appropriate at that time. Indeed, as the court noted . . . 'vigorous cross-examination and presentation of contrary evidence will provide the best means' of

---

determining the extent to which [the expert's] opinion should be admitted and considered in this matter.")